IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-00731-O |
| | § | |
| NICHOLAS M. DIMAS, | § | |
| | § | |
| Defendant. | § | |

## OPINION & ORDER

Before the Court is Plaintiff's Motion for Default Judgment ("Motion") against Nicholas Dimas ("Defendant") (ECF No. 10), filed September 17, 2024. After considering the Motion, pleadings, and applicable law, the Court holds that Plaintiff's Motion should be, and is hereby, **GRANTED**.

I.     **BACKGROUND**[1]

Each United States citizen appointed as a cadet at the United States Merchant Marine Academy ("the Academy") is required to sign a standard form Service Obligation Contract. On or about August 2, 2010, Defendant executed a Service Obligation Contract ("Contract") with the Academy. The Contract contained various service and licensing requirements to remain in effect five to six years after graduation. Further, the Contract required Defendant to "submit an annual service obligation compliance report form to the Academy, Department of Professional Development and Career Services . . . between January 1 and March l of each year following the

---

[1] Unless otherwise noted, the Court's recitation of the facts is based on Plaintiff's Complaint and attached exhibits. *See* Pl.'s Compl., ECF No. 1.

year of graduation, until all components of [his] service obligation are fulfilled and have been so reported."

Because Defendant graduated in 2014, the Contract required him to submit a compliance report each year from 2015 to 2020. Defendant, however, did not submit a 2017, 2018, 2019, or 2020 compliance report. As a result, the Maritime Administration of the United States Department of Transportation ("MARAD") did not have any evidence that Defendant satisfied his service or licensing obligations.

On April 5, 2022, MARAD issued a "Notice of Default Determination" that Defendant breached his service obligations under the Contract. Pursuant to the terms of the Contract in the event of breach, MARAD could order Defendant to serve in the military or to pay the cost incurred by the government for his education at the Academy. MARAD decided to order Defendant pay the cost of his education, which it valued at $239,599. If Defendant did not pay the principal due within 30 days, MARAD advised Defendant it could seek to recoup the principal due through court judgment—plus one percent interest accruing annually. Defendant did not appeal this determination.

No payments or credits have been received or applied to Defendant's account. As a result, on July 1, 2024, MARAD issued a "Certificate of Indebtedness" to Defendant. The matter was referred to the Department of Justice for collection of the debt. On August 2, 2024, Plaintiff brought this action seeking to recoup the amount owed—$244,968.64, which includes a principal amount of $239,599 and $5,369.64 in interest accrued through July 1, 2024; plus interest accruing at one percent annually to the date of judgment, post-judgment interest, costs and attorney's fees.

Defendant was served with the Complaint on August 9, 2024.[2] Defendant emailed Plaintiff's counsel on August 29, 2024, to ask if Plaintiff's counsel was representing him in this matter.[3] Plaintiff's counsel responded that he was representing the interest of the United States and that Defendant would need to secure his own counsel.[4] Neither Defendant nor anyone representing him answered the Complaint or otherwise responded.

Because Defendant failed to timely answer, Plaintiff requested the Clerk enter default against Defendant.[5] *See* FED. R. CIV. P. 12(a)(1)(A)(i). The Clerk entered default on September 5, 2024.[6] On September 17, 2024, Plaintiff filed the instant Motion for Default Judgment.[7]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and subsequent default judgment. The Court's entry of default judgment entails three prerequisites. *N.Y. Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, the defendant must *default* by failing to plead or otherwise respond to the complaint within the time required by the Federal Rules. *Id.* Next, the Clerk must *enter default* when the plaintiff establishes default by affidavit or otherwise. *Id.*; FED. R. CIV. P. 55(a). Last, the plaintiff must ask the Court for entry of a *default judgment*. *N.Y. Life Ins.*, 84 F.3d at 141; FED. R. CIV. P. 55(b)(2).

A court has broad discretion to enter a default judgment, but it is considered "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). It is

---

[2] Aff. of Service, ECF No. 5.
[3] Pl.'s Mot. Def. J. ¶¶ 4–5, ECF No. 10.
[4] *Id.* ¶ 5.
[5] Request for Clerk's Entry of Def., ECF No. 6.
[6] Clerk's Entry of Def., ECF No. 7.
[7] Pl.'s Mot. Def. J., ECF No. 10.

reserved for instances "when the adversary process has been halted because of an essentially unresponsive party." *Id.*

In deciding whether to grant a default judgment, the Court must decide three questions. First, the Court considers whether entry of default judgment is procedurally appropriate by weighing a list of six factors: (1) whether there are disputed material issues of fact; (2) whether a good-faith mistake or excusable neglect caused the default; (3) whether there has been substantial prejudice; (4) the harshness of a default judgment; (5) whether the grounds for a default judgment are clearly established; and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Second, the Court assesses the merits of the plaintiff's claims and the sufficiency of the complaint. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). At the default-judgment stage, the well-pleaded factual allegations "need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[D]etailed factual allegations are not required." *Id.* (alteration in original) (quotation marks and citation omitted). A defendant, "by his default, admits the plaintiff's well-pleaded allegations of fact." *Nishimatsu*, 515 F.2d at 1206.

And third, the Court resolves any remaining issues regarding the amount of damages, if any, and other relief requested. "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing." *James v. Frame*,

4

6 F.3d 307, 310 (5th Cir. 1993). "That rule, however, is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.*

### III. ANALYSIS

#### A. Entry of default judgment is procedurally appropriate.

Having weighed the six *Lindsey* factors, the Court determines that granting default judgment is procedurally warranted. *See* 161 F.3d at 893. First, due to Defendant's non-responsiveness, no material issues of fact have been disputed. Second, there is no evidence to suggest that Defendant's failure to defend this action arises from a good-faith mistake or excusable neglect. Third, Defendant's failure to appear causes substantial prejudice to Plaintiff because it prevents Plaintiff from receiving expeditious relief. Fourth, Defendant's failure to answer, despite receiving proper service and being instructed to retain counsel, mitigates the harshness of a default judgment. Defendant has had ample time to respond to the Complaint, as proceedings were initiated nearly five months ago. Fifth, the grounds for default judgment are clearly established.[8] Sixth and finally, finding that Defendant has made no attempt to participate in this lawsuit in the nearly five months since it was commenced, and because the Court is not aware of any "good cause" for his failure to participate, the Court would be unlikely to set aside the default if it is later attacked. *See* FED. R. CIV. P. 55(c).

#### B. The pleadings establish a viable claim for relief.

Plaintiff successfully establishes its breach-of-contract claim against Defendant. Each United States citizen appointed as a cadet at the Academy is required to sign a standard form Service Obligation Contract, which imposes post-graduate service obligations on cadets and

---

[8] *See supra* notes 5–7. Plaintiff further establishes the grounds for default judgment through its affidavit claiming that Defendant "is not an infant, incompetent or entitled to relief under the Servicemembers Civil Relief Act (50 U.S.C. App. § 501 et seq, as amended) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940)." Pl.'s Mot. Def. J. (Ray Aff.), ECF No. 10-1.

5

requires them annually to submit proof of their compliance. 46 U.S.C. § 51306(a). Here, the Complaint establishes that Defendant executed such a contract in 2010 when he entered the Academy.[9] After Defendant graduated from the Academy in 2014, the Contract required him to submit a compliance report each year, from 2015 to 2020.[10] Defendant breached the Contract by failing to submit compliance reports in 2017, 2018, 2019, and 2020.[11] As a result, there is no proof that Defendant complied with his service obligations under the Contract.[12] Accordingly, there is sufficient basis in the pleadings to establish a breach-of-contract claim.

### C. Plaintiff is entitled to its requested relief.

Plaintiff is also entitled to its requested damages, pre- and post-judgment interest, and costs. "If the Maritime Administrator determines that an individual has failed to fulfill any part of the service obligation contract, . . . such individual may be ordered to active duty." 46 C.F.R. § 310.58(e)(2)(i). However, "if the Maritime Administrator determines that reimbursement of the Cost of Education Provided by the Federal Government would better serve the interests of the United States, the Maritime Administrator may recover from the individual the Cost of Education Provided by the Federal Government." *Id.* § 310.58(e)(2)(ii). "To aid in the recovery of the Cost of Education Provided the Maritime Administrator may request the Attorney General to begin court proceedings." *Id.* § 310.58(i).

As a result of Defendant's breach, MARAD determined that Defendant should pay back the cost of his education, which it valued at $239,599.[13] Accordingly, MARAD issued a "Notice of Default Determination" to Defendant, informing him of his breach and notifying him of his

---

[9] Pl.'s Compl. Ex. A, 5–6, ECF No. 1.
[10] *Id.* at 5, Section B(6).
[11] Pl.'s Compl. ¶ 11, ECF No. 1.
[12] *Id.* ¶ 12.
[13] Pl.'s Compl. Ex. B, 3, ECF No. 1.

obligation to reimburse the United States Government for the cost of his education.[14] It also explained that if he did not pay the principal due within 30 days, MARAD could seek to recoup the principal due through court judgment—plus one percent interest accruing annually.[15] No payments or credits were received or applied to Defendant's account, so on July 1, 2024, MARAD issued a "Certificate of Indebtedness."[16]

To collect the debt, MARAD referred the matter to the Department of Justice. The Department of Justice filed this action requesting judgment in the amount of $244,968.64, which is the sum of (1) the cost of Defendant's education—$239,599; and (2) the interest accrued through July 1, 2024—$5,369.64; plus interest accruing at one percent annually to the date of this judgment, post-judgment interest, costs, and attorney's fees. [17] Attorney's fees were not requested in Plaintiff's Motion for Default Judgment and thus that request is waived.

Because Plaintiff's requested damages amount can be calculated with reasonable certainty without a hearing, the Court grants the award. *See Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No. 3:16-CV-01889-M, 2017 WL 373478, at *3 (N.D. Tex. Jan. 26, 2017) ("[A] hearing is not necessary where the amount of damages can be determined with certainty, by reference to the pleadings and supporting documents, and where a hearing would not be beneficial."). Additionally, the Court grants pre- and post-judgment interest, and costs. Using the figures provided in Plaintiff's attached Certificate of Indebtedness,[18] the Court determines that pre-judgment interest accrued between April 5, 2022, and the date of this judgment is $6,589.80.

---

[14] *Id.* at 1–4.
[15] *Id.* at 3–4.
[16] Pl.'s Compl. Ex. C, ECF No. 1.
[17] Pl.'s Compl. 3, ECF No. 1.
[18] Pl.'s Compl. Ex. C, ECF No. 1.

Accordingly, Defendant owes Plaintiff $246,188.80—the principal plus pre-judgment interest—in addition to post-judgment interest at the rate of 4.23% per annum and costs of court.

## IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS** Plaintiff's Motion for Default Judgment against Defendant. Accordingly, damages are awarded to Plaintiff in the amount of $246,188.80, plus post-judgment interest at a rate of 4.23% per annum, and costs of court. The Court shall issue Final Judgment separately from the date of this Order.

**SO ORDERED** on this **6th day** of **January, 2025**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**